IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Edwin Pierce, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| vs. | : | _____ |
| | : | |
| Howard and Sons Automotive | : | |
| Services, Inc. and Philip Howard, | : | |
| | | |
| Defendants. | | |

## COMPLAINT

Edwin Pierce ("Pierce"), brings this Complaint against Howard and Sons Automotive Services, Inc. ("Howard and Sons") and Philip Howard ("Howard") (collectively "Defendants"), and show the Court as follows:

**INTRODUCTION**

1.

This is a wage and hour case in which the Pierce, a former tow truck driver, seeks to recover earned but unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

## JURISDICTION AND VENUE

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b) and 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Defendant Howard and Sons, Inc. ("Howard and Sons") is located in Cobb County, Georgia, within this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## THE PARTIES

4.

Pierce resides in Fulton County, Georgia.

5.

Howard and Sons employed Pierce as a tow truck driver in and around Atlanta, Georgia from approximately January 4, 2016 through April 10, 2018.

6.

Howard and Sons is a domestic profit corporation organized under the laws of the State of Georgia.

7.

At all times material hereto, Howard and Sons was an "employer" of Pierce as defined in 29 U.S.C. §203(d).

8.

Howard and Sons is subject to the personal jurisdiction of this Court.

9.

Howard and Sons may be served with process through its registered agent Philip Howard located at 1650 Armstrong Place, Mableton, Georgia 30126.

10.

At all times material hereto, Pierce has been an "employee" of Howard and Sons as defined in 29 U.S.C. § 203(e)(1).

11.

At all times material hereto, Defendants have jointly operated a tow truck service with its principal place of business located at 1650 Armstrong Place, Mableton, Georgia 30126.

12.

Defendant Howard resides in Cobb County, Georgia.

13.

At all times material hereto, Howard was an "employer" of Pierce as defined in 29 U.S.C. §203(d).

14.

Howard is subject to the personal jurisdiction of this Court.

15.

Howard may be served with process at his business address located at 1650 Armstrong Place, Mableton, Georgia 30126 or wherever he may be located.

**INDIVIDUAL COVERAGE**

16.

During the Relevant Time Period, Pierce was "engaged in commerce" as an individual employee of Howard and Sons as defined in 29 U.S.C. § 207(a)(1).

17.

Specifically, Pierce regularly operated tow trucks for the purpose of providing towing services for persons with disabled vehicles on Interstate and U.S. Highways, thereby keeping the instrumentalities of interstate commerce free from obstructions.

**ENTERPRISE COVERAGE**

18.

At all times relevant to this action, Howard and Sons was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in 29 U.S.C. § 206(a) and 29 U.S.C. § 207(a)(1).

19.

Specifically, at all times material hereto, Howard and Sons employed two or more persons who regularly provided towing services for disabled or abandoned vehicles on Interstate and U.S. highways, thereby providing for the free flow of traffic on the national highway system.

20.

During 2016, Howard and Sons had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

21.

During 2017, Howard and Sons had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

22.

During 2018, Howard and Sons had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

23.

During all times relevant to this action, Pierce and at least two other employees of Howard and Sons handled goods which moved in interstate commerce in the furtherance of the commercial purpose of Howard and Sons including trucks, gasoline, engine oil, uniforms, and cellular phones.

24.

During 2016, Howard and Sons had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

25.

During 2017, Howard and Sons had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

26.

During 2018, Howard and Sons had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

27.

During 2016, Howard and Sons had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

28.

During 2017, Howard and Sons had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

29.

During 2018, Howard and Sons had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

30.

At all times during the Relevant Time Period (i.e. from January 4, 2016 through April 10, 2018), Howard and Sons has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

31.

Throughout the Relevant Time Period, Defendants provided Pierce with all tools, equipment, and other materials necessary for Pierce to perform his job as a tow truck driver, including the tow trucks.

32.

At all times during the Relevant Time Period, Howard and Sons Treated Pierce as an employee.

**STATUTORY EMPLOYER**

33.

At all relevant times, Howard has acted directly or indirectly in the interest of Howard and Sons in his interactions with Pierce and controlled the terms and conditions of Pierce's employment.

34.

At all relevant times, Howard was involved in the day-to-day operation of Howard and Sons.

35.

Specifically, at all times relevant to this action Howard has had the highest-level management authority at Howard and Sons.

36.

At all times during the Relevant Time Period, Howard exercised operational control over Pierce's work activities.

37.

At all times during the Relevant Time Period, Howard was involved in the day to day operation of the Howard and Sons in which Pierce worked.

38.

At all times during the Relevant Time Period, Howard exercised supervisory authority over Pierce.

39.

At all times during the Relevant Time Period, Howard scheduled Pierce's working hours or supervised the scheduling of Pierce' working hours.

40.

At all times during the Relevant Time Period, Howard exercised authority and supervision over the terms of Pierce's compensation.

**PIERCE WAS A NON-EXEMPT EMPLOYEE**

41.

At all times during the Relevant Time Period, Pierce was not exempt from the maximum hour requirements of the FLSA by reason of any FLSA exemption.

42.

At all times during the Relevant Time Period, Howard and Sons did not employ Pierce in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

43.

At all times during the Relevant Time Period, Howard and Sons did not employ Pierce in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

44.

At all times during the Relevant Time Period, Howard and Sons did not employ Pierce in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

45.

At all times during the Relevant Time Period, Pierce did not supervise two or more employees.

46.

At all times during the Relevant Time Period, Howard and Sons did not employ Pierce in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

47.

During most of the Relevant Time Period, Pierce did not travel out of the State of Georgia on a regular basis and did not reasonably expect to do so.

48.

During most of the Relevant Time Period, the Secretary of Transportation did not have the power to establish Pierce's qualifications and maximum hours of service pursuant to the provisions of 49 USC § 31502.

49.

During most of the Relevant Time Period, Pierce was not exempt from the maximum hour requirements of the FLSA because of the Motor Carrier Exemption (29 U.S.C. § 213(b)(1)).

50.

During most of the Relevant Time Period, Pierce's work for Defendants did not involve interstate commerce as defined by the Motor Carrier Act (49 U.S.C.A. § 10521).

51.

During most of the Relevant Time Period, Howard and Sons was not an operator within the purview of the Motor Carrier Act (49 U.S.C.A. § 3102).

52.

During most of the Relevant Time Period, Pierce did not operate "commercial motor vehicle[s]" within the meaning of the Motor Carrier Act (49 U.S.C.A. § 31132(1)).

**FAILURE TO PAY OVERTIME**

53.

During the Relevant Time Period, Pierce normally worked 5 days during most work weeks.

54.

During the Relevant Time Period, Pierce normally worked Monday through Friday during most work weeks.

55.

During the Relevant Time Period, Pierce was normally "on call" during one work night per week, normally on Thursday.

56.

During the Relevant Time Period, Pierce normally worked at least one Saturday during each month.

57.

Upon hire, Defendants advised Pierce that he would be scheduled to work from 8:00 a.m. until 5:00 p.m.

58.

During the Relevant Time Period, Pierce normally worked at least 10 hours during each work shift.

59.

During the Relevant Time Period, Pierce worked as much as 17 hours in one work shift.

60.

During the Relevant Time Period, Pierce regularly did not take a designated lunch break wherein he was relieved of all work duties.

61.

During the Relevant Time Period, Defendants advised Pierce that he was to deduct an hour from his working hours as reflected in his "driver's daily log" whether or not he actually took a lunch break.

62.

During the Relevant Time Period, Howard and Sons agreed to pay Pierce commissions based on a percentage of the service fees Howard and Sons retained in connection with the service calls he completed.

63.

During approximately the first year of his employment from January 4, 2016 through January 2017, Howard and Sons agreed to pay Pierce a commission based on 29% of the service fees collected on calls he completed.

64.

Howard & Sons later agreed to pay Pierce a commission based on 32% of the service fees collected on calls he completed.

65.

At all times during the Relevant Time Period, Howard and Son's agreement with Pierce pertaining to the payment of commissions were reflected in written documents entitled "Driver Commission Reports" provided by Defendants to Pierce.

66.

At all times during the Relevant Time Period, Pierce performed his job duties for Howard and Sons in reliance on both written and oral representations of Howard and Sons as the calculation of retained service fees.

67.

29 C.F.R. § 778.118 sets forth the manner for calculating overtime wages to employees who receive a portion of their earnings in commission each week.

68.

29 C.F.R. § 778.118 requires that the sum total of the commission earned and other earnings be divided by the total hours worked in order to determine the regular hourly rate.

69.

29 C.F.R. § 778.118 further requires that "(t)he employee must be paid extra compensation at one-half that rate for each hour worked in excess of" forty hours per week.

70.

During each applicable pay period from June 2015 through December 31, 2016, Howard and Sons failed to calculate a regular rate for Pierce by dividing the sum total of the commission he earned and other earnings by the total hours worked.

71.

During each applicable pay period from June 2015 through December 31, 2016, Howard and Sons did not pay Pierce extra compensation at one-and-one-half times such a regular rate.

72.

At all times during the Relevant Time Period, Howard and Sons did not pay Pierce at one-and-one-half times his regular hourly rate for each hour worked in excess of 40 in each workweek.

## WILLFULNESS AND LACK OF GOOD FAITH

73.

Throughout the Relevant Time Period, Howard and Sons compensated Pierce solely on the basis of commissions.

74.

Defendants knew or should have known that Pierce was an employee covered by the FLSA's maximum hours provisions.

75.

Defendants knew or should have known that the FLSA requires that Defendants compensate Pierce at one-and-one-half times his regular hourly rate for each hour worked in excess of forty (40) hours in a single workweek.

76.

**THROUGHOUT THE RELEVANT TIME PERIOD, DEFENDANTS WILLFULLY FAILED TO COMPENSATE PIERCE AT ONE-AND-ONE-HALF TIMES HIS REGULAR HOURLY RATE FOR EACH HOUR WORKED IN EXCESS OF 40 HOURS PER WEEK AS REQUIRED BY 29 U.S.C. § 207. COUNT I - FAILURE TO PAY OVERTIME**

77.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

78.

From January 4, 2016 through April 10, 2018, Pierce was an employee covered by the FLSA and entitled to the overtime protections set forth in 29 U.S.C. § 207(a).

79.

From January 4, 2016 through April 10, 2018, Pierce regularly worked in Defendants' employ in excess of forty (40) hours during each work week.

80.

From January 4, 2016 through April 10, 2018, Defendants failed to pay Pierce at one-and-one-half times his regular hourly rate for time worked in excess of forty (40) hours in each work week.

81.

Defendants willfully failed to pay Pierce at one-and-one-half times his regular hourly rate for work in excess of forty (40) hours in any work week during the Pierce Relevant Time Period.

82.

Pierce is entitled to payment of overtime wages in an amount to be determined at trial, in accordance with 29 U.S.C. § 216(b).

83.

As a result of the underpayment of overtime compensation as alleged above, Pierce is entitled to recover liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

84.

As a result of the underpayment of overtime compensation as alleged above, Pierce is entitled to recover his litigation costs, including his reasonable attorney's fees in accordance with 29 U.S.C. § 216(b).

WHEREFORE, Pierce respectfully prays that this Court:

1. Issue a judgment declaring that Pierce was an employee of Defendants and was covered by the provisions of the FLSA and finding that Defendants have failed to comply with the overtime wage requirements of the FLSA in 2016, 2017 and 2018;
2. Award Pierce due but unpaid overtime compensation in an amount to be determined at trial against Defendants, jointly and severally, plus an additional like amount in liquidated damages;
3. That Pierce be awarded prejudgment interest on all amounts owed;
4. That Pierce be awarded nominal damages;
5. That Pierce be awarded his costs of litigation, including his reasonable attorney's fees from Defendants, jointly and severally pursuant to 29 U.S.C. § 216(b); and

6. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

|  |  |
|---|---|
|  | **DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC** |
| 3100 Centennial Tower<br>101 Marietta Street<br>Atlanta, Georgia 30303<br>(404) 979-3150<br>(404) 979-3170 (f)<br>charlesbridgers@dcbflegal.com<br>kevin.fitzpatrick@dcbflegal.com<br>benjamin@dcbflegal.com | */s/Charles R. Bridgers*<br>Charles R. Bridgers<br>Ga. Bar No. 080791<br><br>*/s/Kevin D. Fitzpatrick, Jr.*<br>Charles R. Bridgers<br>Ga. Bar No. 080791<br><br>*/s/ Mitchell D. Benjamin*<br>Mitchell D. Benjamin<br>Ga. Bar No. 049888<br><br>Counsel for Pierce |